246 So.2d 838

**Nola Abshire BROUSSARD et vir.**

v.

**NATIONAL FOOD STORES OF LA., INC.**

No. 50592.

March 29, 1971.

Rehearing Denied May 3, 1971.

Edwards, Edwards & Broadhurst, Homer Ed Barousse, Jr., Crowley, for plaintiffs-appellants.

Davidson, Meaux, Onebane & Donohoe, Edward C. Abell, Jr., Lafayette, for defendant-respondent.

McCALEB, Chief Justice.

Mrs. Nola Abshire Broussard is suing to recover damages for personal injuries, including a miscarriage, allegedly sustained by her when she fell while shopping in a grocery store owned by the National Food Stores of La., Inc. Her husband, Leroy Broussard, as head of the community, seeks to recover for the medical expenses said to have been incurred as a result of Mrs. Broussard's fall. Plaintiff's action is based on defendant's alleged negligence in permitting a dangerous condition to exist on its premises to which the fall is attributed.

The trial court rendered judgment in favor of Mrs. Broussard in the amount of $3,500, and in favor of her husband for $732.65.

On appeal, the Court of Appeal reversed the judgment and dismissed plaintiffs' suit. 233 So.2d 599. We granted certiorari. 256 La. 352, 236 So.2d 494.

Although the trial court assigned written reasons for judgment, it gave little consideration to the evidence establishing the occurrence of plaintiff's alleged fall and its

cause. The Court of Appeal pretermitted that issue, it merely observing that:

> "In allowing recovery, the trial court essentially accepted the testimony of plaintiffs' witnesses that she had fallen on a wet spot on the floor. * * *

> "Under the trial court's evaluation of the evidence, she *may* have proved that she fell on a slippery substance which created an unreasonable hazard to the passage of a customer. However, she did not also prove how long the substance had been there (if the result of spillage by another customer) nor that the substance had been placed there by the store employees.

> "Thus, Mrs. Broussard did not prove that National Food had either actual or constructive knowledge of the hazard. It is therefore exempt from liability for the damage sustained by its customer." (Emphasis added)

We were prompted to grant certiorari herein on the showing made by plaintiffs, in their application to this Court, to the effect that the decision of the Court of Appeal, insofar as it deals with the required proof of defendant's negligence, is in conflict with the pronouncements made by the Court of Appeal, 1st Circuit, in Lang v. Winn-Dixie, Louisiana, La.App., Inc., 230 So.2d 383.

■ Nevertheless, our granting of the writ brings the whole case before us and "we consider all points involved as we do in cases before us on appeal." Law v. Osterland, 198 La. 421, 3 So.2d 680; Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483; Rigouts v. Larkan, 244 La. 479, 153 So.2d 363. See also Calvert Fire Ins. Co. v. Lewis, 231 La. 859, 93 So.2d 194.

■ Before determining whether the Court of Appeal has in this matter set forth correctly the proof required of a plaintiff in "slip and fall" cases to establish that the store owner was negligent as to the maintenance of the premises, we must first decide whether these plaintiffs have proved by a preponderance of the evidence that Mrs. Broussard fell in the store and that her fall was caused by the unsafe condition of the premises—in this instance, the presence of water (or other wet substance) on the floor to which she attributes her fall.

Our review of the record leaves us with the firm conviction that plaintiffs' evidence herein falls far short of proving, as alleged by them, that Mrs. Broussard slipped and fell as a result of a dangerous substance in the passage aisle where she was walking.

To support their allegations on this vital issue plaintiffs rely primarily on Mrs. Broussard's own testimony and that of her half-sister (Mrs. Mary Gary), the only two eye-witnesses who testified. But we find the statements of these witnesses too unreliable to establish the claim. This is clear-

ly demonstrated by Judge Miller of the Court of Appeal, in a separate opinion he wrote, on plaintiff's application for a rehearing, in which he sets down cogent reasons for concurring in the denial of a rehearing. (See 233 So.2d, pages 603 through 606.) Indeed, not only do we subscribe to Judge Miller's views, we are indebted to him for his thorough and detailed analysis of the evidence which led him to conclude that the testimony of plaintiffs' witnesses was "contradictory and bizarre." His observations as to the conflicts are borne out by the record in every instance, and it would serve no useful purpose to reiterate them in this opinion.

However, with regard to showing the utter lack of credibility of the testimony of Mrs. Broussard, we note (in addition to the contradictions pointed out by Judge Miller) that in a pretrial deposition she testified with regard to her clothes that: "They were kind of dusty and all wet. I don't know if they were wet, but they got dirty a little." And when asked if she had looked to see what was on the floor she said, "No, sir"; when questioned further about what was on the floor and whether she saw it wet she said, "No, sir. But it felt wet and I slipped down." By the time of the trial she testified that she had a little wet on her dress—"not all that much" and that the floor "looked kinda wet, a little."

Mrs. Broussard also testified that, although she had fallen almost right in front

of the cash register, she did not call it to the attention of the cashier, but that Mrs. Gary did when they checked out. On the other hand, Mrs. Gary testified that she did not tell the cashier anything.

Mrs. Broussard's husband who, according to the testimony of plaintiffs' witnesses, was in the store but did not see her fall, testified that he came over right after she fell. He was not questioned about, and did not testify that he observed, anything on the floor. Neither he nor Mrs. Gary gave any testimony concerning the "wetness" of Mrs. Broussard's dress.

Furthermore, when testifying at the trial, Mrs. Broussard twice on cross-examination categorically denied that she had ever had a prior miscarriage and also declared that she had never told Dr. Carl Curtis (her treating physician) that previously she had suffered one. Upon being faced with the fact that defense counsel was aware that she had told Dr. Curtis that she previously had a miscarriage, she was finally prevailed upon to admit that she had indeed suffered a prior miscarriage.

With regard to Mrs. Gary's testimony (in addition to the conflicts pointed out by Judge Miller), we note that she stated unequivocally in a pretrial statement, "My sister was wearing flat shoes. I do not know what she slipped on." At the trial she said: "They did have a little spot of water on the floor."

Having concluded that plaintiffs have failed by a preponderance of credible evidence to prove that Mrs. Broussard slipped and fell in the defendant's store as a result of the presence of a dangerous substance on the floor, we need not consider the issue of where the burden of proof lies to show that the defendant did or did not take sufficient precautions to maintain the premises in a safe condition for the use of its customers.

For the reasons assigned the judgment of the Court of Appeal is affirmed at plaintiffs' costs.

TATE, J., recused, having participated in the Court of Appeal consideration.