DOMENGEAUX, Judge.
This is a slip and fall case wherein Val-mont Benoit and his wife, Mrs. Rose Benoit, sued J. Weingarten, Inc. for alleged injuries to Mrs. Benoit and special damages to Mr. Benoit caused by an accident which occurred in the defendant’s store located on Ryan Street in the City of Lake Charles, Louisiana, on August 3, 1971.
This jury case resulted in a verdict for plaintiffs in the amount of $750.00 to the wife and $194.61 to the husband. Defendant appeals the adverse judgment and plaintiffs have answered the appeal asking for an increased award for general damages.
The facts show that the defendant store was opened for business at 9:00 A.M. on the day of the accident.
Plaintiff Mrs. Benoit testified that she and her husband drove to the Weingarten store shortly before the store opened. Inasmuch as it had been raining heavily, she waited in the car until the rain slacked down. She then got out of the car, preceded by her two grandchildren who ran into the store ahead of her. She was wearing ladies rubber soled tennis shoes. Of necessity she walked in some water, trying to avoid large puddles, and entered the front of the store by stepping on a rubber runway which causes the entrance door to automatically open. As she walked the length of the rubber mat she turned to her right and took one or two steps off the mat, and “hit some water” and fell twisting to her right and landing in a sitting position. Her right leg folded under her and her left foot stretched out.
On cross-examination she testified:
Q. Mrs. Benoit, where were the children when you fell ?
A. I presume they was at those riding horses because that’s where they had went to, and that’s where I had seen them just a minute before.
Q. In fact, were you looking at them as you were walking in the store?
A. Yes, sir, I was.
Q. Weren’t you looking back in their direction when you slipped?
A. Yes, sir, I was.
Q. So, Mrs. Benoit, you didn’t see the floor in front of you where you placed your foot before you slipped, did you?
A. No, sir. When I hit it, that’s when I felt the water.
*841 Q. You keep telling the jury you felt the water. Mrs. Benoit, did you ever see any water on the floor?
A. No, sir.
Q. Well, how do you know there was water on the floor?
A. I felt it. When I raised my hand it looked like water that was on my hands then.
Q. How much water do you think was on the floor that you felt? Was it a puddle or a pool of water ?
A. It must have been a little puddle.
Q. Let me ask you this: You say it “must have been.” I don’t want any assumption. What I want you to do is to tell us exactly what you know. Do you know that it was a pool of water ?
A. Yes, sir, because my pants was wet when I got up.
Q. And this was on the right side of your pants.
A. Yes, sir.
Q. Did you ever look at the water at anytime, even while you were sitting on the floor ?
A. No, sir. My knee was hurting too much.
Q. So you never did glance down to see if there was water on the .... (interruption by witness).
A. No, sir, I did not.
Q. Mrs. Benoit, assuming now that you think there was water on the floor, do you know how that water came to be on the floor?
A. No, sir, I do not.
Q. Do you know how long the water, if it was there, had been on the floor ?
A. No, sir, I do not.
Q. It could have been from the customer that came in right ahead of you?
A. I do not know, sir.
Q. It could have been from your grandchildren ?
A. I do not know, sir.
Although the testimony varies as to the actual time of the accident, it appears that it occurred between five and ten minutes after the store opened at 9:00 A.M. Mr. Hubert Hooper, defendant’s assistant store manager, who assisted Mrs. Benoit from the floor to the store’s office, and filled out an accident report, testified that after the plaintiff had been helped up and assisted to the store’s office he looked at his watch and the time was 9:10 A.M. He also testified that he examined the floor immediately upon Mrs. Benoit’s rising from the site of the accident and saw only one or two damp footprints, which could well have been those of Mrs. Benoit.
Mrs. Dorothy Hinman, one of defendant’s female employees, testified that she had just entered the store and had not yet come on duty and was selecting a greeting card at a spot some fifteen feet away from Mrs. Benoit. She heard an exclamation from Mrs. Benoit and turned in time to see the plaintiff’s knee touch the floor. She stated that she looked at the spot where the plaintiff fell and could see there was nothing on the floor, no water and no puddles.
Mr. Willie Bennett, a porter employed at the defendant’s store, was standing some *842 thirty feet away from the site of the accident and heard the exclamation. He turned and saw Mrs. Benoit sitting on the floor some one or two feet from the non-skid mat. He also testified that approximately ten to fifteen minutes before he saw Mrs. Benoit on the floor he had dry-buffed the area with a buffing machine. He further stated that shortly after Mrs. Benoit had been helped up and removed from the spot, he called for a mop and bucket and went over to the spot to clean up any water that might have been on the floor. When he got there he looked and saw that there was no water, nor dampness of any kind on the floor, and therefore nothing to mop.
The evidence shows that when it was raining it was the policy of the defendant store to bring a mop and bucket to the front so that one of the porters would check the floor and keep it mopped dry. However, in this case, the mop and bucket and not been brought up inasmuch as the store had only been opened for a few minutes and only about ten persons had come into the store at the time of the accident. The porter, Bennett, testified in his deposition which was admitted into evidence, that at the time of the accident there was no cause or reason to start using the mop in view of the clean condition of the floor at that time.
Plaintiff, Mrs. Benoit, nor anyone else saw any water at the site of the accident. She claims that she felt something wet and presumed it was water. She doesn’t know how much water, if any, was there. She was wearing rubber soled ladies tennis shoes. She had just walked on a wet surface outside the door. She walked on the aforementioned rubber mat which is itself non-absorbent. She did not know whether she stepped on a second non-skid but absorbent mat, just inside the door which was placed there for the purpose of allowing patrons to dry their feet. She does not know how the alleged water got on the floor, and did not know whether it could have come from a customer who had preceded her or from her own grandchildren.
The trial jury obviously accepted the testimony of Mrs. Benoit that she had fallen on a wet spot on the floor.
The general principles of law concerning slip and fall cases when invitees are on the premises of storekeepers is set out in the case of Broussard v. National Food Stores of Louisiana, Inc., La.App., 233 So.2d 599, as follows :
[1] A store proprietor is not an insurer of the safety of his patrons. He does, however, owe an affirmative duty to his customers to use ordinary care to keep his aisles, passageways, and floors in a reasonably safe condition.
The duty to use reasonable care extends to every hazard which creates an unreasonable risk of foreseeable harm to his store invitees. This duty includes reasonable inspection of the premises for defects and obstructions to passageway, and reasonable warning of perils which the customers may not see through the exercise of ordinary care. (In this latter regard, it must be taken into consideration that the invitee’s attention may be distracted by the advertising and merchandise along the passageways or by the crowded condition of the premises.)
[2] In determining this duty, consideration must be given to several factors, including the nature of the premises, the business purposes for which it is used, the volume of business, the likelihood that the passageway may become obstructed through shopping activities of employees and other customers, and the nature of the obstacle.
[3] In order to impose liability on the store operator, an injured customer must prove by a preponderance of the evi *843 dence that a dangerous condition which caused injury to him: (1) was created by the storekeeper himself (or some person for whom he is legally liable) ; or (2) either (a) was actually known to the storekeeper or his employees or (b) had existed for a sufficient length of time for the storekeeper to have constructive knowledge of it (i. e., that its presence should have been discovered through the exercise of reasonable care). In this respect, the mere fact that a customer falls while using a store aisle does not by itself create any presumption of fault on the part of the storekeeper.
For further examples of these general legal propositions see also Hay v. Sears, Roebuck & Company, La.App., 224 So.2d 496; Chauvin v. United States Fidelity & Guaranty Company, La.App., 223 So.2d 441; Lofton v. Travelers Insurance Company, La.App., 208 So.2d 739, writs refused 252 La. 457, 211 So.2d 327; Sigler v. Mount Vernon Fire Insurance Company, La.App., 201 So.2d 656; Gauthier v. Liberty Mutual Insurance Company, La.App., 179 So.2d 437; Provost v. Great Atlantic and Pacific Tea Company, Inc., La.App., 154 So.2d 597; Brown v. Kroger Company et al., La.App., 252 So.2d 336; Levine v. Hartford Accident & Indemnity Company, La.App., 149 So.2d 433; Galloway v. Employers Casualty Company, La.App., 257 So.2d 760.
Even viewed in the light most favorable to plaintiff, i. e., that Mrs. Benoit slipped on a wet spot on defendant’s floor, under the existing jurisprudence, we must conclude that the trial jury erred in allowing recovery in this case in that the plaintiffs failed in their burden of proof as set out therein.
In view of our conclusion it is unnecessary that we consider Mrs. Benoit’s alleged contributory negligence or the nature and extent of her injuries.
For the above and foregoing reasons the judgment of the trial court will be reversed and judgment will be entered in favor of defendant, rejecting plaintiff’s demands at their costs in both the District Court and this court.
Reversed and rendered.